UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STEVEN HALL,

                              Plaintiff,

         vs

FR. DAVID TRESSIC; HOWARD J. HUBBARD;
ROMAN CATHOLIC DIOCESE OF ALBANY;
KAREN HOOSE; ISRAEL TORRO; MICHAEL
COSTELLO; and JANET CHARNEY,

                              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

AUG 15 2005

LAWRENCE K. BAERMAN, Clerk
UTICA

5:04-CV-925

APPEARANCES:                                OF COUNSEL:

JOHN A. ARETAKIS, ESQ.
Attorney for Plaintiff, Steven Hall
353 East 54th Street
New York, New York  10022-4965

MICHAEL W. SMRTIC, ESQ.
Attorney for Defendant, Fr. David Tressic
289 North Main Street
Gloversville, New York  12078

TOBIN & DEMPF                               MICHAEL L. COSTELLO, ESQ.
Attorneys for Defendants,
    Howard J. Hubbard, Roman Catholic Diocese
    of Albany; and  Michael Costello
33 Elk Street
Albany, New York 1 2207

ROCHE, CORRIGAN, McCOY & BUSH              ROBERT P. ROCHE, ESQ.
Attorneys for Defendants (Co-counsel)
    Howard J. Hubbard, Roman Catholic Diocese
    of Albany; and Michael Costello
36 South Pearl Street
Albany, New York 12207

DREYER, BOYAJIAN LLP                        DANIEL J. STEWART, ESQ.
Attorneys for Defendant, Karen Hoose
75 Columbia Street
Albany, New York  12210

ROSEN & LIVINGSTON                                    PETER I. LIVINGSTON, ESQ.
Attorneys for Defendant, Janet Charney
275 Madison Avenue
New York, New York  10016-1101

DAVID N. HURD
United States District Judge

## MEMORANDUM DECISION and ORDER

## I.  INTRODUCTION

Plaintiff Steven Hall ("plaintiff" or "Hall") brings suit alleging that defendants acted to cover-up sex abuse by a local priest, defendant Fr. David Tressic ("Father Tressic").  Father Tressic was employed by defendant Roman Catholic Diocese of Albany (the "Diocese") under the supervision of defendant Howard J. Hubbard ("Bishop Hubbard").  Defendants Michael Costello ("Costello"), and Janet Charney ("Charney"), are attorneys who represented these defendants during the relevant time period.  Defendant Karen Hoose ("Hoose") worked as a secretary to Father Tressic at Sacred Heart Church in Gloversville, New York.  Defendant Israel Torro ("Officer Torro") is a New York State Trooper who worked on an investigation of plaintiff that occurred during the series of events which make up this case.

Hall asserts nine causes of action.  He only asserts one federal claim and it is under the civil Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-6818.  He also asserts eight state law claims against the various defendants: (1) malicious prosecution and/or false arrest; (2) intentional infliction of emotional distress; (3) negligence; (4) common law fraud (in negotiations); (5) libel; (6) breach of an oral contract; (7) sex abuse; and (8) breach of fiduciary duty.

Father Tressic, Bishop Hubbard, the Diocese, and Costello, move  pursuant to Fed. R. Civ. P. 12 (b)(1) and (6) to dismiss the complaint.  Hoose and Charney move on those

grounds and pursuant to Fed. R. Civ. P. 12(c).  Torro did not make a motion.  Plaintiff

opposes.  The parties did not request oral argument.  Therefore, the motions were

considered on the submissions.

## II. <u>FACTS</u>

Unless otherwise noted, the following facts are taken from the complaint and

plaintiff's RICO statement submitted pursuant to N.D.N.Y. Local Rule 9.2.[1]

At the time Hall met Father Tressic in 1996, he was homeless, destitute, and

involved in drugs and prostitution.  (Docket No. 1, Complaint at ¶ 24.) ("Complaint at __".)

Father Tressic "befriended [Hall] and eventually provided room and board, as well as a

menial maintenance position for [him] in . . . the rectory of Sacred Heart for approximately

four years, or from 1998-2002."  <u>Id</u>. at ¶ 26.  Father Tressic also told plaintiff that he was

putting money aside for his future and continuing educational costs.  <u>Id</u>. at ¶ 30.  During this

time, plaintiff attended college to become a teacher.

---

[1] This rule requires courts to construe the RICO statement as an amendment to the complaint. The complaint attempts to state violations of 18 U.S.C. §1962 (c) and (d).  The RICO statement states that §1962(a) and (b) were also violated.  (Docket No. 6, RICO Statement at ¶ 1.)

The §1962(a) violation is apparently brought against Bishop Hubbard as the Diocese is not listed as a defendant in the RICO claim.  RICO Statement at ¶ 11.  The alleged violation is based on Bishop Hubbard's and the Diocese's receipt of unlawful debts in the form of payments from defrauded insurance companies and parishioners.  There are simply no facts alleged which involve parishioners.  The complaint states that employees of the Diocese are being paid with funds illegally obtained from insurance companies.  But the pleading is insufficient in that there is no description of the use or investment of that or any other income by Bishop Hubbard to acquire or maintain an interest in an any particular enterprise.  <u>See</u> N.D.N.Y. Local Rules General Order 14 at ¶ 11(Eff. March 7, 2003); <u>see</u>, <u>e.g.</u>, <u>OSRecovery, Inc. v. One Groupe Int'l, Inc.</u>, 354 F. Supp. 2d 357, 372 (S.D.N.Y. 2005)

The § 1962(b) violation, also apparently attributable to Bishop Hubbard, alleges the acquisition and control over a RICO enterprise and refers to the complaint generally.  RICO Statement at ¶ 12.  The one paragraph reference in the RICO statement fails to meet the requirements of the RICO statement itself.  It does not describe the enterprise or set forth any allegations to provide detail as to the maintenance or control of any interest in an enterprise.  <u>See</u>, <u>e.g.</u>, <u>OSRecovery, Inc.</u>, 354 F. Supp. 2d at 372.

The conclusory statements added in the RICO statement, and not addressed in the complaint or motion papers, are insufficient to trigger a thorough analysis of any §1962(a) or (b) violation.  The RICO claim will be treated as asserting violations of §1962(c) and (d) as listed and described in the complaint.  Indeed, plaintiff's motion papers argue and state "Plaintiff's RICO claim is premised on 18 U.S.C. § 1962(c)."  (Docket No. 22,  Mem. of Law in Opp. Mot. to Dismiss at 15.)

While the nature of the relationship between Hall and Father Tressic is disputed in that sometimes it is portrayed as a father-son relationship, plaintiff claims that he was sexually abused and molested at various times during the four years he lived and worked at Sacred Heart. Id. at ¶ 31-33. Plaintiff did not condone or permit the activity, but rather resisted without leaving the situation because he was afraid to lose the financial security Father Tressic provided. Plaintiff adds that Bishop Hubbard knew about Father Tressic's sexual orientation, and, in fact, condoned and permitted his lifestyle. Id. at ¶ 34.

In August of 2002, Hall sought to change his situation. He accused Father Tressic of sexual abuse and attempted to negotiate a civil settlement which would provide him with some money. Id. at ¶ 35. He met with Father Tressic, Bishop Hubbard, and William Przyluch, from Catholic Charities, in early September; and then the two defendants in October of 2002, to discuss his claims. Id. at ¶¶ 40, 47. "In [the October] meeting, Bishop Hubbard stated that Father Tressic was to continue to pay plaintiff's food and rent stipend at State University of New York at Cortland until the civil matter was resolved or settled. Id. at ¶ 47. Father Tressic did pay these expenses through July of 2003. Id. at ¶ 51. In early November of 2002, there was another meeting when plaintiff accepted a $75,000 settlement offer from Father Tressic as payment in full and final satisfaction of any and all claims or possible causes of action. Id. at ¶¶ 48, 56. The $75,000 offer was not memorialized until March 19, 2003. Id. at ¶ 52. Costello drafted the Settlement and Release Agreement and mailed it to plaintiff. Id. at ¶ 263.

In May of 2003, Father Tressic, now represented by Charney instead of Costello, filed criminal charges against Hall for attempted felony extortion. Id. at ¶ 54. The charge was based on allegations that plaintiff repeatedly threatened to go to the media with his story

- 4 -

if he did not receive some money.  Plaintiff opines that the filing of this charge, along with charges against two others also claiming sexual abuse, was done in an effort to make the defendants appear proactive in handling sex abuse matters.  Id. at ¶¶ 60-63, 66.  At the time plaintiff was unaware of the criminal charges filed against him and continued to negotiate a civil settlement.

Officer Torro began an investigation into the extortion charges against plaintiff. This involved working with Hoose, the church secretary, in secretly tape recording conversations with plaintiff.  (Docket No. 6, RICO Statement at ¶ 2(D).)  ("RICO Statement at __".)  Costello and Charney also participated in the continuing negotiation process. (Complaint at ¶¶ 52, 83.)  Plaintiff asserts that during this time period of the investigation, May 2003 through August 2003, he was regularly told that the settlement money was forthcoming and relied on those statements in managing his finances.  He concludes that the overlapping investigation and negotiations demonstrate both fraud in negotiating, and entrapment in investigating.

On August 19, 2003, Officer Torro took Hall "into custody and interrogated" him concerning the alleged extortion.  The interview lasted an hour and was taped.  Id. at ¶¶ 80, 81.  The next day plaintiff attended a scheduled mediation meeting where he was informed that Fr. Tressic did not intend to pay the $75,000 settlement.  Id. at ¶¶ 83-86.  Plaintiff concluded that the meeting was a sham and attempted to file charges against Father Tressic, but Officer Torro would not permit it.  Id. at ¶ 87.

Hall was "ultimately arrested and indicted by a Fulton County Grand jury on or about October 6, 2003 with a crime of Attempted Grand Larceny in the Second Degree."  Id. at 37.  Plaintiff testified before the Grand Jury for three hours.  Id. at ¶ 96.  He is unsure, but

believes that the defendants testified against him and alleges that they committed perjury. Id. at ¶ 97.

Shortly thereafter, in November 2003, plaintiff was forced to withdraw from school. Id. at ¶¶ 95, 281.   Having criminal charges brought against him, and being indicted on a felony, mandated that plaintiff withdraw from the student teaching position at which he was working.  Id. at ¶¶ 119, 282, 283.  Plaintiff notes that the rules and policies regarding becoming a teacher have changed recently, and because of the loss of the student teacher position, he is now required to retake many college credits.  Id. at ¶¶ 122, 285.

On February 25, 2004, the indictment against Hall was dismissed in the "interest of justice."  Id. at ¶ 115.  In dismissing the claim, the judge noted the weaknesses in the government's case:  Hall never actually got any money; the negotiations that occurred tended to negate the requisite criminal intent; Father Tressic was reluctant to testify; punishment would be unlikely to effect Hall's character; and the crime was unlikely to be repeated.  However, the judge made a point of noting the propriety of the indictment.  The record before the Grand Jury was unusually full and complete, and the defendant's testimony was both ambiguous and harmful to his interests.  (Decision and Order Fulton County Court, Indict. No. 2003-92, Hon. Polly Hoye, at 3, 5.)

Plaintiff filed the instant action in August of 2004.  In stating his RICO claim, plaintiff alleges that defendants have acted in furtherance of a "scheme to protect predatory priests and other clergy from criminal and civil prosecution, to maintain or increase charitable contributions and/or avoid public scandal."[2]  Id. at ¶ 243.

---

[2] Plaintiff lists several enterprises that were directed in furtherance of the scheme.  The first, an association in fact enterprise, consists of all the defendants except the Diocese.  (Complaint at ¶ 229.)  The
(continued...)

## III. DISCUSSION

### A. Motion to Dismiss

"On a Rule 12 motion to dismiss, the court must accept the factual allegations contained in the complaint, and the RICO statement where RICO claims are asserted, as true, and draw all reasonable inferences in favor of the plaintiff." Nasik Breeding & Research Farm Ltd. v. Merck & Co., 165 F. Supp. 2d 514, 525 (S.D.N.Y. 2001). The court's function  is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). Therefore, the defendants' present motion will only be granted if it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Goldman, 754 F.2d at 1065.

### B. § 1962(c) RICO Claim

To properly allege a RICO claim, plaintiff must set forth allegations which demonstrate a substantive violation of 18 U.S.C. § 1962, and then demonstrate that the alleged injury occurred as a result of that violation. See 18 U.S.C. § 1964(c) ("injured in his business or property by reason of a violation of section 1962 of this chapter.")

Section 1962 creates a private right of action against:

> Any person who: (a) invests or otherwise uses, directly or indirectly, income derived from a pattern of racketeering activity to acquire an interest in or to establish or operate an enterprise engaged in interstate commerce; (b) acquires or maintains, directly or indirectly, an interest in or control of such an enterprise through a pattern of racketeering activity; (c) is employed by or associated with such an enterprise and conducts or

---

[2](...continued)
other configurations consist of the Diocese and/or Bishop Hubbard (¶ 233) or the  Diocese, Bishop Hubbard and Father Tressic (¶ 236).

participates, directly or indirectly, in the conduct of its affairs through a
pattern of racketeering activity; or (d) conspires to do any of the foregoing.

18 U.S.C. § 1962 (1988).  In short, a substantive RICO claim "requires (1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity." <u>Sedima, S. P. R. L. v. Imrex Co.,</u>

<u>Inc.,</u> 473 U.S. 479, 496 (1985).

      "RICO defines 'pattern of racketeering activity' as requiring 'at least two acts of

racketeering activity' committed in a 10 year period. . . .To establish a pattern, a plaintiff must

also make a showing that the predicate acts of racketeering activity by a defendant are

'related, and that they amount to or pose a threat of continued criminal activity.'" <u>Cofacredit,</u>

<u>S.A. v. Windsor Plumbing Supply Co.,</u> 187 F.3d 229, 242 (2d Cir. 1999) (quoting 18 U.S.C.

§ 1961(5);  <u>H.J., Inc. v. Northwestern Bell Tel. Co.,</u> 492 U.S. 229, 239 (1989)).

      Thus, to demonstrate a pattern of racketeering activity, a plaintiff begins by alleging

that each defendant engaged in two or more predicate acts. <u>G-I Holdings, Inc. v. Baron &</u>

<u>Budd</u>, 238 F. Supp. 2d 521, 537 (S.D.N.Y. 2002) (citing <u>Citadel Mgmt., Inc. v. Telesis Trust,</u>

<u>Inc.,</u> 123 F. Supp. 2d 133, 155 (S.D.N.Y. 2000); <u>Lakonia Mgmt., Ltd. v. Meriwether</u>, 106 F.

Supp. 2d 540, 550 (S.D.N.Y. 2000)).  "Those offenses which may serve as predicate acts for

a RICO claim are exclusively listed in . . . 18 U.S.C. § 1961(1)." <u>Red Ball Interior Demolition</u>

<u>Corp. v. Palmadessa</u>, 874 F. Supp. 576, 586 (S.D.N.Y. 1995).  Section 1961(1) defines

"racketeering activity" to include a list of criminal offenses, which are in turn defined by

federal and state law. <u>Cofacredit</u>, 187 F.3d at 242; <u>King v. Lasher</u>, 572 F. Supp. 1377, 1382

(S.D.N.Y. 1983).  More specifically, according to § 1961:

> (1) "racketeering activity" means (A) any act or threat involving murder,
> kidnaping, gambling, arson, robbery, bribery, extortion, dealing in
> obscene matter, or dealing in a controlled substance or listed chemical
> (as defined in section 102 of the Controlled Substances Act), which is

chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code.

18 U.S.C. § 1961 (2000).  Thereafter, in sections (1)(B) and (C), the statute lists at least fifty federal statutes of which a violation would constitute racketeering activity.  Sections (1)(D)-(G) list additional racketeering activities in the areas of securities, reporting of financial transactions, immigration, and terrorism.

Plaintiff characterizes defendants' conduct as violating four § 1961 statutes:  the Hobb's Act, 18 U.S.C. §1951; the Protection of Children Against Sexual Exploitation Act, 18  U.S.C. § 2251; and the wire and mail fraud statutes, 18 U.S.C. §§ 1341, 1343.[3]   In the end, the allegations do not allege sufficient § 1961 predicate acts to demonstrate a pattern of racketeering activity under § 1962.  Moreover, to the extent that the complaint alleges RICO activity, the acts cannot be considered the proximate cause of plaintiff's injury.

Before considering the plaintiff's claim, it must be noted that the complaint and RICO statement list numerous activities engaged in by members of the Catholic church and law enforcement officials in handling allegations of sexual abuse by priests in an attempt to cover up such abuse.  The extensive and colorful portrayal of the social and political backdrop to defendants' alleged conduct is essentially irrelevant to the facts of this case. RICO requires that plaintiff demonstrate defendant conduct in a pattern of racketeering that injures the plaintiff.  "The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the

---

[3]  Plaintiff describes his claim in his RICO statement: "The RICO claim is based on the predicate offenses of wire fraud, mail fraud and circumstances constituting fraud."  (RICO Statement at ¶ 4.)

enterprise, which are proscribed by section 1962(d)." <u>United States v. Persico</u>, 832 F.2d 705, 714 (2d Cir. 1987).

Furthermore, plaintiff has listed numerous defendant acts and struggled to categorize them as RICO predicate acts.[4]  To be clear, the only allegations that are relevant to support the RICO claim are those actually engaged in by the instant defendants that violate § 1961 and may be related to the plaintiff's injuries.

### 1. **Pattern of Racketeering Activity**

### a. **Hobbs Act**

Plaintiff asserts that defendants violated the Hobbs Act, which "penalizes, <u>inter</u> <u>alia</u>, 'whoever . . . obstructs, delays, or affects commerce . . . by robbery or extortion . . . or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section.'" <u>Kimm v. Chang Hoon Lee</u>, Civ. Act. No. 04-CV-5724, 2005 U.S. Dist. LEXIS 727, at *19 (S.D.N.Y. Jan. 13, 2005) (quoting 18 U.S.C. §§ 1951(a)).  "Extortion, in turn, is defined as 'the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.'" <u>Id.</u> (quoting 18 U.S.C. § 1951(b)(2)).  There are no allegations in the

---

[4]  The complaint lists the following defendant activities:

engage in or join in a conspiracy to intentionally, recklessly and/or negligently conceal criminal conduct of its agents, aid and abet the concealment of criminal conduct, fail to report criminal conduct, obstruct justice, obstruct criminal investigation, obstruct state and local law enforcement, evade criminal and/or civil prosecution and liability, pay or offer to pay money to victims in order to keep criminal conduct secret, violate the civil rights of children, families and vulnerable adults, engage in mail and/or wire fraud, and commit fraud and or fraudulent inducement of parishioners

(Complaint at ¶ 243.)  There are also general allegations of perjury (¶ 272 ), making fraudulent misrepresentations ( (¶ 257), bribery (not in the context of this case)(¶ 257), filing of false criminal charges, entrapment (¶ 265), and soliciting or using confederates (¶ 298).

complaint that demonstrate robbery, extortion, or threats of violence on the part of the defendants.

### b. **Protection of Children Against Sexual Exploitation Act**

Plaintiff asserts that defendants' conduct violates the Protection of Children Against Sexual Exploitation Act of 1997, 18 U.S.C. § 2251. The statute provides for fines and imprisonment for persons who exploit children. Despite plaintiff's great efforts to connect the allegations of this case to the allegations of persons alleging sex abuse of children by members of the Catholic clergy, there are simply no such allegations regarding the defendants or any children in the facts and circumstances of this case. Plaintiff has not demonstrated that any defendant conduct may be considered actionable under this statute.

### c. **Wire Fraud**

Plaintiff asserts that defendants made misrepresentations during the course of the settlement negotiations, which were actually a scheme to defraud. Plaintiff adds that the defendants regularly used telephone lines to communicate, and also to secretly tape record conversations with plaintiff. The use of the phone lines is noted to provide a basis for plaintiff's assertion of wire fraud as a predicate act. See 18 U.S.C. § 1961(1) (listing wire fraud, 18 U.S.C. § 1343)).

However, "the wire fraud statute requires that the defendant communicate by wire in 'interstate or foreign commerce' in furtherance of a scheme to defraud." Cofacredit, 187 F.3d at 243 (citing Smith v. Ayres, 845 F.2d 1360, 1366 (5th Cir. 1988)("Purely intrastate communication [is] beyond the statute's reach."); United States v. De Biasi, 712 F.2d 785, 791-92 (2d Cir. 1983)). There are no allegations of any interstate phone calls, nor do the facts alleged allow for an inference that any calls were interstate or foreign calls.

### d. Mail Fraud

Mail fraud is defined as the use of the mail to further "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses." 18 U.S.C. § 1341 (2000).   Plaintiff asserts that defendants made misrepresentations during the course of the settlement negotiations, which were actually a scheme to defraud.  More specifically, the scheme to defraud involved defendants pretending to negotiate a settlement with plaintiff while actually trying to set him up for extortion charges.  Plaintiff adds that the defendants regularly used the mail to communicate, to provide a basis for plaintiff's assertion of mail fraud as a predicate act.  (Complaint at ¶ 275.); see 18 U.S.C. § 1961(1) (2000) (listing mail fraud, 18 U.S.C. § 1341)).

"To state a RICO claim against a particular defendant based on allegations of mail and wire fraud, the complaint must allege that the defendant participated in at least two acts of mail or wire fraud." First Interregional Advisors Corp. v. Wolff, 956 F. Supp. 480, 485 (S.D.N.Y. 1997) (citing Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993)). The allegations "must meet the rigorous pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." Bologna v. Allstate Ins. Co., 138 F. Supp. 2d 310, 321 (E.D.N.Y. 2001).  Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9 (b) (2000) "To specify acts of alleged wire and mail fraud with the necessary particularity, the complaint should contain evidence of the content, time, place, and speaker of each alleged mailing or wire transmission." Id. (citing Ouaknine v. MacFarlane, 897 F.2d 75, 79 (2d Cir. 1990)).

The complaint lists only one use of the mail by one defendant.  Costello mailed a copy of the settlement agreement to plaintiff in March of 2003.  (Complaint at ¶ 275.)

Thus, plaintiff's fraud allegations support a sparse mail fraud claim which, however elaborated by other non-RICO allegations, is insufficient to satisfy the predicate act requirement of at least two predicate acts that form a pattern of racketeering activity.

### e. RICO Pattern

While the allegation of a solitary mailing by a lone defendant as part of a fraudulent scheme is not sufficient to trigger liability and federal jurisdiction under RICO, it will be assumed arguendo that given the opportunity to amend, plaintiff could have alleged additional mailings with particularity.  Plaintiff still would not be able to allege a sufficient pattern of racketeering activity because "[p]laintiff must plead that at least two or more predicate acts are related and that they amount to, or pose a threat of continuing criminal activity." Greenstone Roberts Advertising/Florida v. Gold Star Cruises, 951 F. Supp. 402, 402-403 (E.D.N.Y.1997) (citations omitted); Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997); see H.J., Inc., 492 U.S. at 239.

> To satisfy the requirement of continuity, a plaintiff in a RICO action must allege 'either an 'open-ended' pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended' pattern of racketeering activity (i.e., past criminal conduct 'extending over a substantial period of time').

Greenstone Roberts Advertising/Florida, 951 F. Supp. at 402-403 (quoting G.I.C.C. Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995)).

The nature of the allegations here, fraud in negotiating a settlement agreement, are not the sort which demonstrate an inherent threat of future criminal activity.  H.J., Inc., 492 U.S. at 242-43.  Furthermore, the duration of the alleged scheme is simply too short to constitute a closed-ended RICO pattern.  The whole scheme spanned from August 2002 through August 20, 2003, when plaintiff learned of the charges against him, and that Father

Tressic refused to settle. This span of one year is not of sufficient duration to state a closed pattern of RICO activity. As the Second Circuit noted last year, this Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir. 2004) (citing First Capital Asset Mgmt. v. Brickelbush, Inc., 150 F. Supp. 2d 624, 634 & nn. 37-41 (S.D.N.Y. 2001); Mason Tenders Dist. Council Pension Fund v. Messera, Civ. Act. No. 95-CV-9341, 1996 U.S. Dist. LEXIS 8929, at *20-21 (S.D.N.Y. June 25, 1996)).

Despite plaintiff's apparent opinion to the contrary, "acts . . . [that] are unrelated to the predicate acts which allegedly injured plaintiff . . . cannot be considered as part of the activity to extend the scope of the pattern." Shamis v. Ambassador Factors Corp., Civ. Act. No. 95-CV-9818, 1997 U.S. Dist. LEXIS 12241, 43-44 (S.D.N.Y. Aug. 18, 1997) (citations omitted.) The decades of sex abuse cover-up activity by Catholic and civil authorities can not be tagged onto the conduct of the instant defendants in relation to the plaintiff in this case.

Plaintiff has not set forth facts to demonstrate that the acts alleged could demonstrate a pattern of racketeering activity for RICO purposes.

### 2. Proximate Causation

"Congress did not deploy RICO as an instrument against all unlawful acts. It targeted only predicate acts catalogued under section 1961(1). Admittedly, RICO is to be read broadly to effect its purpose. Its purpose, however, is to target RICO activities, and not other conduct." Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d Cir. 1990) (citation omitted). "Any recoverable damages occurring by reason of a violation of § 1962(c) will flow from the commission of the predicate acts." Sedima, 473 U.S. at 497. Plaintiff has not demonstrated that predicate activity caused his injury.

- 14 -

"The Second Circuit has carefully addressed the 'causation' element due to the proliferation of "creative pleading" by plaintiffs who seek to take advantage of RICO's generous remedies . . .  Specifically, a plaintiff must show that his injury was 'caused by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts.'" Chandradat v. Navillus Tile, Inc., Civ. Act. No. 03-CV-10093, 2004 U.S. Dist. LEXIS 19483, at *10-11 (S.D.N.Y. Sept. 28, 2004) (citations omitted).  "The requirement in § 1964(c) that a civil RICO plaintiff show that it was injured in its business or property 'by reason of' the defendant's RICO violation means that the plaintiff must plead and prove that the violation not only was the logical, or 'but for,' cause of the injury but also was its legally cognizable, or proximate, cause."  Ideal Steel Supply Corp. v. Anza, 373 F.3d 251, 257 (2d Cir. 2004); Lerner v. Fleet Bank, N.A., 318 F.3d 113, 120 (2d Cir. 2003); Hecht, 897 F.2d at 23 ("By itself, factual causation (e.g., 'cause-in-fact' or 'but for' causation) is not sufficient.")

The causal nexus must logically connect plaintiff's injury with defendants' overt § 1961 predicate acts.  Hecht, 897 F.2d at 25.  Plaintiff has failed to show a causal nexus between the alleged RICO activity, mail fraud in the form of Costello's letter enclosing a settlement agreement and release, and his indictment.

The most logical way to approach the causation issue in the midst of plaintiff's flurry of federal, state law, and ethical violations is to begin with plaintiff's alleged RICO injury and work back towards its cause.  No matter the gravity of a personal injury, RICO applies only where a plaintiff demonstrates an injury to property.  See, e.g., N.O.W. v. Scheidler, 968 F.2d 612 (7th Cir. 1992).  Plaintiff alleges damage to his schooling progress which cost him tuition money and time.  The complaint is clear that his studies were interrupted by the loss of his

student teaching position.  He lost his position because he was indicted by a Grand Jury on a felony charge.

The indictment was the result of non-RICO conduct, the alleged malicious prosecution by the defendants.  Actually, reading the complaint as a whole, the allegations best set forth a malicious prosecution claim, and not surprisingly, plaintiff's loss of schooling and teaching opportunities flow directly from the conduct which supports that claim. Malicious prosecution is not considered a predicate act for RICO purposes.  Von Bulow v. Von Bulow, 657 F. Supp. 1134, 1143 (S.D.N.Y. 1987).  And plaintiff's injury "must be a direct result of the alleged violation, not the result of a non-RICO violation."  OSRecovery, Inc. v. One Groupe Int'l, Inc., 354 F. Supp. 2d 357, 372 (S.D.N.Y. 2005); Lerner v. Fleet Bank, N.A., 318 F.3d 113, 122-23 (2d Cir. 2003) (no proximate cause where violations of state law reporting requirements caused injury as that is not a RICO predicate act); Red Ball Interior Demolition Corp., 874 F. Supp. at 587.  The fact that a judge and Grand Jury participated in the indictment process, and that plaintiff himself testified for three hours, further attenuates the remote causal nexus, if any, of defendants' alleged mail fraud to the indictment.[5]

The alleged mail fraud, wherein defendants were representing that they were interested in a settlement agreement when they were not, would result in damages akin to the consequences of lost time, perhaps the loss of a claim due to the statutory limitations or forgone opportunities, but would not result in the injuries plaintiff allegedly suffered as a

---

[5]  Plaintiff's malicious prosecution claim suffers an arguably serious deficiency.  The claim requires that plaintiff obtain a favorable determination on the charge against him.  Russo v. New York, 672 F.2d 1014, 1018 (2d Cir. 1982).  Dismissal on grounds in the interest of justice is not necessarily considered a favorable determination for the purposes of a malicious prosecution claim.  See Cantalino v. Danner, 96 N.Y.2d 391, 392 (N.Y. 2001)

- 16 -

result of his indictment.  Therefore, even if one assumes that plaintiff has properly stated a RICO claim, the one bare mail fraud predicate act by Costello, was not the proximate cause of plaintiff's injuries.

### C. Section 1962(d) RICO Conspiracy Claim

Section 1962(d) of RICO mandates that it is "unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." 18 U.S.C. § 1962(d) (2000).  As Hall has not alleged a legally sufficient substantive RICO claim, his RICO conspiracy claim cannot survive. Kimm, 2005 U.S. Dist. LEXIS 727, at * 20 (citing Citadel Mgmt., 123 F. Supp. 2d at 156 ("[A] RICO conspiracy claim cannot stand where, as here, the elements of the substantive RICO provisions are not met."); see also, Daddona v. Gaudio, 156 F. Supp. 2d 153, 165 (D. Conn. 2000).

### D. State Law Claims

"Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims where 'the district court has dismissed all claims over which it has original jurisdiction.'" Manhattan Telecomms. Corp. v. DialAmerica Mktg., 156 F. Supp. 2d 376, 384 (S.D.N.Y. 2001).  Considering that the only federal claim in this action is to be eliminated at the early pleading phase of the litigation, supplemental jurisdiction of the remaining state laws claims is declined, and those claims will be dismissed without prejudice. See Valencia v. Sung M. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (citing 28 U.S.C. § 1367(c)); Martinez v. Simonetti, 202 F.3d 625, 636 (2d Cir. 2000) (directing dismissal of supplemental state law claims where no federal claims remained).

### E. **Officer Torro**

The record does not reveal whether Officer Torro was ever served with process, retained an attorney, or otherwise participated in the instant proceedings.[6] Presuming without deciding that Officer Torro was properly served and is a defendant in this action, the complaint as addressed to him will be dismissed <u>sua</u> <u>sponte</u> despite the fact that the record does not reveal any participation by him in the instant motions. <u>See</u>, <u>e.g.</u>, <u>Howard v.</u> <u>Lemmons</u>, 547 F.2d 290, 290 (5th Cir. 1977). "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12 (h)(3) (2000). The motions to dismiss brought by each of the other defendants will be granted as plaintiff failed to state a federal claim and jurisdiction of the state law claims is declined. The allegations in the complaint and RICO statement concerning Officer Torro do not demonstrate any conduct that would place him outside the scope of the RICO analysis above. Thus, as he is the only remaining defendant in a complaint over which federal jurisdiction is lacking, the RICO claims against him will be dismissed in the interests of judicial economy, and the state law claims will be dismissed without prejudice.

## IV. **CONCLUSION**

Plaintiff has failed to state that the defendants engaged in sufficient predicate acts over a long enough period of time to demonstrate a pattern of racketeering activity to sustain his RICO claim. Moreover, to the extent that the complaint does allege racketeering activity, it is not causally linked to plaintiff's injury.

---

[6] If Officer Torro was properly served but declined to participate, plaintiff has not filed for a default judgment against him.

Therefore, it is

ORDERED that

1.  Defendants, Fr. David Tressic, Howard J. Hubbard, Roman Catholic Diocese of Albany, Karen Hoose, Michael Costello, and Janet Charny's, motions to dismiss the complaint are GRANTED;

2.  The complaint against defendant Israel Torro is DISMISSED sua sponte;

3.  The complaint is DISMISSED in its entirety, the RICO claims with prejudice and the state law claims without prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Court

Dated:   August 15, 2005
         Utica, New York.